594 So.2d 966 (1992)
Leonard WILLETT, et al., Plaintiffs-Appellants,
v.
NATIONAL FIRE AND MARINE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 90-801.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
Writ Denied May 8, 1992.
*967 Baggett, McCall & Burgess, Robert C. Arledge, Lake Charles, for plaintiffs-appellants.
Plauche, Smith & Nieset, Jeffery M. Cole, Thomas W. Sanders, Lake Charles, for defendants-appellees.
Before DOUCET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a conflict of laws case. Leonard and Willie Willett, New Hampshire residents, were injured when their automobile, a borrowed Louisiana vehicle, was rear ended by an eighteen wheeler in Lake Charles, Louisiana, in July 1988. Leonard Willett was driving a vehicle owned by Abel Pousson of Lake Charles. The Willetts filed suit in Calcasieu Parish, Louisiana, for their damages. Two Louisiana residents, T & J Motors, the owner of the eighteen wheeler, and Rockie C. Chick, its driver, were made defendants. Two insurance companies were also made defendants. National Fire and Marine Insurance Company was sued as the liability insurer of the eighteen wheeler. Its limits were $750,000. The other insurer was Allstate Insurance Company, which provided the Willetts uninsured and underinsured coverage in the amount of $100,000.
The Allstate policy was written, issued and delivered in New Hampshire. The policy covered a car belonging to the Willetts which was principally garaged in New Hampshire. New Hampshire law permitted, and the policy provided, that Allstate was entitled to a credit for its $100,000 uninsured and underinsured coverage if the liability coverage provided by the tortfeasor was equal to or in excess of $100,000. This meant that if New Hampshire law applied in this case, Allstate had no exposure for the $100,000 underinsured motorist coverage. If Louisiana law applied, the Allstate $100,000 was available to the Willetts.
Allstate moved for summary judgment, relying on its policy, New Hampshire law, and the Louisiana Supreme Court decision in Snider v. Murray, 461 So.2d 1051 (La. 1985). The trial judge granted the motion and dismissed the suit against Allstate. The trial court granted summary judgment solely on its finding that Act 444 of 1987, which legislatively overruled Snider, was substantive and therefore not retroactive in application. Granting the summary judgment on the nonretroactivity issue, the trial court never reached the question of choice of law in this case.
The Willetts appealed urging that Snider was legislatively overruled by La.Act 444 of 1987; that La.R.S. 22:1406(D)(1), as amended by Act 444 of 1987, applies to this policy; that Louisiana law is the choice of law; and that Louisiana law permits recovery from Allstate of an additional $100,000. We agree, reverse, and remand for further proceedings.
Initially, we note that the trial court's judgment was in error in holding that the application of Act 444 of 1987 to this case would require giving it retroactive application. Somewhere along the line the attorneys *968 and the trial judge made a chronological miscalculation, still pursued in briefs on this appeal. The true order of events is: Act 444 of 1987 became effective September 1, 1987; the Allstate-Willett insurance contract came into existence on April 15, 1988; the accident happened on July 17, 1988. Consequently, the Act was not ex post facto, and retroactivity was a false issue.
Our first inquiries are to determine to what extent Act 444 of 1987, amending La.R.S. 22:1406(D)(1), changed the law, and whether the statute, as amended, applies to this case.
Historically, the object of the Louisiana uninsured motorist statute, La.R.S. 22:1406(D), has always been to promote full recovery for damages by innocent automobile accident victims. The statute meets this objective by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981).
Before the 1987 amendment, La. R.S. 22:1406(D)(1)(a) read as follows:
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
By 1985, a conflict had developed in the circuit courts of appeal concerning the application of the above quoted statute to an insurance policy issued and delivered in another state covering a vehicle registered or principally garaged in that state. The Louisiana Supreme Court in Snider granted writs to resolve that conflict.
Snider involved a Texas uninsured motorist policy, a Louisiana court, and a Louisiana accident. The plaintiffs, whose Texas policy coverage was invoked, had moved to Louisiana two or three months before the accident. The Second Circuit found the statute applicable and also found that Louisiana's interest in applying its law outweighed that of Texas. 448 So.2d 1383 (1984). The Supreme Court reversed, concluding that La.R.S. 22:1406(D)(1) did not purport to affect policies written and delivered in other states covering vehicles garaged or registered elsewhere. Therefore, said the Supreme Court, it was not appropriate to reach the question of choice of law, because there was no Louisiana law applicable. It said, at 461 So.2d 1053:
"Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La.R.S. 22:1406(D)(1)."
Act 444 of 1987 amended La.R.S. 22:1406 Subparagraph (D)(1)(a), and added the following sentence, designated 1406(D)(1)(a)(iii):

*969 "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."
We interpret the effect of Act 444 of 1987 as overruling Snider. We reach this conclusion because the statute as amended is no longer limited in its effect to only those policies that are delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state. By the amendment the statute additionally imposes underinsured motorist requirements upon any liability insurance covering any accident which occurs in this state and involves a resident of this state.
In the present case, the accident occurred in this state. Two Louisiana residents, T & J Motors and Rockie C. Chick, were involved in the accident. Accordingly, since the accident occurred in this state and involved residents of this state, the underinsured motorist requirement of La. R.S. 22:1406(D)(1)(a)(iii), as amended by Act 444 of 1987, applies.
We move next to the question of choice of law. The case has contacts with New Hampshire because the policy was written there, and the plaintiffs are residents of that state. The case also has contacts with Louisiana, because the wrongful conduct and the injuries occurred in this state, and Louisiana residents were involved. Which state's law applies will determine whether Allstate's underinsured motorist coverage is available to the plaintiffs in this case.
Louisiana's new law of choice of law, Act 923 of 1991, did not become effective until January 1, 1992, and therefore it does not apply to this case. To answer the question we must look to the jurisprudence. The jurisprudence on similar facts consists almost entirely of Second Circuit cases. The legislative overruling of Snider reopens the door to our consideration of what the Second Circuit thought about choice of law in this kind of case.
In Sutton v. Langley, 330 So.2d 321 (App.2d Cir.), writ denied, 332 So.2d 805 (La.1976), choice of law between Texas and Louisiana arose in a Louisiana accident case where a guest passenger resident of Texas sued her driver, likewise a resident of Texas. Applying the interest analysis approach first employed by the Supreme Court in Jagers v. Royalty Indemnity Co., 276 So.2d 309 (La.1973), the Sutton court examined the interests of the two states, as follows:
We recognize that Texas is not without any interests in the uninsured motorist coverage question. That interest lies in the possible effect the application of Louisiana law might have on insurance rates for such coverage written in Texas for Texas residents. However, it must be said that this interest is minimal when one is dealing with a standard form insurance contract written by an insurer who does business in several, if not all, the states. Also, it must be recognized that in our mobile society the insurer could not reasonably contemplate the insured driving only in Texas and being subject to Texas interpretations of the policy provisions at all times.
When Texas' interest is compared to Louisiana's interest in the regulation of awards to victims on its highways, and in protecting persons on its highways from damage by uninsured motorists, and in equally assessing the burden of that award to all culpable parties, it must be concluded that the interests of Louisiana prevail. Louisiana standard-policy construction should apply in a Louisiana court in preference to the Texas construction of that policy. This conclusion is further buttressed by the recognition that Louisiana domiciliaries who are defendants in this case could be adversely affected by the Texas construction of the uninsured motorist provisions by limiting the fund from which plaintiffs claims are to be satisfied.
In Bloodworth v. Carroll, 455 So.2d 1197 (La.App.2d Cir.1984), remanded for reconsideration in light of Snider, 463 So.2d 1313 (La.1985), the conflict was between the law of Georgia, where the policy was issued and delivered, and the law of *970 Louisiana, where the accident happened. If Georgia law applied, uninsured motorist coverage was limited to $5,000. Louisiana law, if it controlled, mandated coverage of $50,000. Bloodworth applied Louisiana law. The court said that the legislative intent, as expressed in La.R.S. 22:1406(D)(1)(a), was clear that uninsured motorist coverage as required by the statute was Louisiana public policy for the protection of victims of injuries in Louisiana accidents caused by the uninsured and underinsured motorist. It identified the underlying theory in simple style: "Louisiana interest in protecting victims on its highways is higher and of greater significance than the interest of the states wherein the policies were written." See also Wilson v. State Farm Ins. Co., 448 So.2d 1379 (La.App. 2d Cir.1984).
We agree with these views. We find in this case that Louisiana's interests outweigh those of New Hampshire. The accident happened in Louisiana and involved the owner of the eighteen wheeler and its driver, both of whom were residents of Louisiana. As defendants, their interests could be adversely affected by a New Hampshire construction of the underinsured motorist provision by limiting the fund from which the plaintiffs' claims are to be satisfied. Moreover, other economic interests are involved. For example, the cost of medical care provided in Louisiana for the injured parties is generally more likely to be paid if there is sufficient insurance.
These interests are consistent with Louisiana's long-time policy of requiring uninsured and underinsured motorist protection. By Act 444 of 1987, the legislature reaffirmed Louisiana's public policy for the financial protection of victims of injuries in Louisiana accidents caused by the uninsured and underinsured motorist. Louisiana law does not make Louisiana residence a prerequisite to the application of its uninsured motorist laws for the benefit of a party injured in this state. It requires only that Louisiana residents be involved. We conclude that, as between Louisiana and New Hampshire in this case, the interests and the policies of Louisiana would be most seriously impaired if its law is not applied to the issue of whether Allstate's underinsured motorist coverage is available. Louisiana is the choice of law.
We have read, as requested by appellee at oral argument, the case of Gates v. Claret, 945 F.2d 102 (5th Cir.1991). Gates did not consider Act 444 of 1987. That decision relies primarily on Louisiana Law as expressed in Powell v. Warner, 398 So.2d 22 (La.App. 4th Cir.1981), a case decided before the enactment of Louisiana Act 444 of 1987. We do not believe that Powell represents the current Louisiana law on this subject matter.
For the foregoing reasons, the summary judgment granted by the trial court is reversed and set aside, and the case is remanded to the trial court for further proceedings in accordance with law. Costs of this appeal are assessed to Allstate.
REVERSED AND REMANDED.