685 So.2d 516 (1996)
Wanda TRAUTMAN, et. al., Plaintiffs-Appellees,
v.
Larry T. POOR, et al., Defendants-Appellants.
No. 96-627.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*517 Ronald L. Menville, for Wanda Trautman, et al.
Leon Elzear Roy, III, New Iberia, for Larry T. Poor, et al.
Nicholas Gachassin, Jr., Gerald J. Dartez, Lafayette, for Victoria Fire & Casualty Co.
Before THIBODEAUX, COOKS and GREMILLION, JJ.
COOKS, Judge.
Victoria Fire and Casualty Company (Victoria) appeals the district court's grant of Wanda Trautman's motion for partial summary judgment. Applying Louisiana Conflicts of Law, Civil Code Article 3544, the trial court chose this state's law and found invalid a "prior consent to settle" clause contained in an insurance policy issued by Victoria to a Tennessee resident involved in an automobile accident in this state. For different reasons, we affirm the trial court's ruling.

FACTS
A vehicle owned by a Louisiana resident and operated by another Louisiana resident struck a vehicle owned and operated by a Tennessee resident in the Parish of St. Martin. At all relevant times, Victoria had in full force and effect a policy of automobile insurance providing uninsured motorist coverage for plaintiff, the Tennessee resident, and the vehicle she was operating in Louisiana on the day of the mishap. Plaintiff was residing in Tennessee when the policy was secured, which covered her vehicle registered in that state. The Victoria policy, in the part pertinent to this dispute, contained a clause excluding uninsured/underinsured motorist (UM) coverage if the insured failed to obtain prior consent from it before settling with the primary parties.[1] Plaintiff settled her primary claims against the tortfeasor without securing Victoria's prior consent.
When plaintiff notified Victoria of her intent to claim UM benefits pursuant to the terms of its policy, Victoria denied that coverage existed. Plaintiff filed suit in Louisiana. Victoria answered plaintiffs UM claim against it asserting she breached an exclusionary *518 condition of the policy; and, as a consequence, the policy provided no coverage for the excess damages she sustained as a result of the tortfeasor's admitted negligence.
Plaintiff then filed a "Motion for Partial Summary Judgment" seeking a determination from the trial court on whether this state's or Tennessee's law applied in assessing the validity of the "prior consent to settle" clause found in Victoria's policy.
Finding Louisiana Civil Code article 3544 controls the "conflict of laws" issue raised and that this provision requires application of Louisiana law to the underlying dispute, the trial court granted partial summary judgment on the coverage question in plaintiffs favor.
Victoria appeals the district court's partial summary judgment, asserting the following assignments of error:
1. The district court committed manifest error in concluding that Article 3544 governs the factual situation of this case.
2. The district court committed manifest error in concluding Tennessee law does not govern the validity of the contract of insurance issued to a resident of Tennessee in the State of Tennessee.

LAW & DISCUSSION
Appellate courts review summary judgments de novo using the same criteria that the trial court used in determining whether summary judgment is appropriate. Bertrand v. Metropolitan Life Ins. Co., 93-1123 (La.App. 3 Cir. 4/6/94), 635 So.2d 579. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law, then summary judgment shall be rendered forthwith. La.Code Civ.P. art. 966(b). When a motion for summary judgment is made, an adverse party may not rest on the mere allegations or denials of his pleading, but his response must set forth specific facts showing there is a genuine issue for trial, and if he does not respond, summary judgment, if appropriate, shall be rendered against him. La.Code Civ.P. art. 967.
The issues raised by Victoria do not survive or fail based on our review of the facts which are, in the main, undisputed. Though Victoria bifurcated the argument it urges us to accept as meritorious, the real issue presented for our consideration is singular in scope. The question is whether the law of Louisiana barring inclusion of "prior consent clauses" in automobile insurance contracts should apply, where the accident occurred and was caused by a tortfeasor residing and operating a vehicle registered in Louisiana versus the law of the State of Tennessee allowing such clauses, where the plaintiff resided and was operating a Tennessee registered vehicle at the time insured by a policy issued by Victoria, an Ohio company.
Generally, absent constitutional restrictions, a court will follow the statutory direction of its own state on choice of law issues. Restatement (Second) of Conflicts of Law § 6 (1971); Levy v. Jackson, 612 So.2d 894 (La.App. 4 Cir.1993). Victoria does not quarrel with this accepted principle of law. Rather, Victoria's discontent hinges on its insistence that the trial court misapplied Louisiana's choice of law article 3544 which it argues relates to delictual and quasi-delictual and not contractual actions. Victoria insists the relationship between it and the insured is cemented by contract and more appropriately governed by article 3537. We have examined both articles with a scrivener's eye and find neither applies to the "issue" in controversy.
As Victoria notes Louisiana revised, amended, and re-enacted its conflict of laws provisions, previously consisting of Articles 14 and 15, to consist of Articles 14 through 49, effective January 1, 1992 and redesignated by the Louisiana State Law Institute as Book IV of the Louisiana Civil Code and renumbered articles 3515 through 3549. Paraphrasing Article 3544(2)(a), the trial judge found "an offense which has caused harm to parties domiciled in different states when the injury and conduct occurred in one of the states, the law of that state applies." Thus, finding both the "injury and conduct" occurred in Louisiana, the trial judge reasoned *519 Louisiana's law applied in interpreting the validity of Victoria's "prior consent" provision. Although reading and lifting this section from the full text of article 3544 reasonably supports an interpretation favoring application of Louisiana law, we must avoid such myopic review of statutory provisions. We cannot ignore the preface of Article 3544 in deciphering its meaning. The Article begins: "Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order...." The phrase "as between a person injured by %65 5an offense or quasioffense and the person who caused the injury" is not ambiguous. See La.Civ.Code art. 9. The article purports to regulate issues to loss distribution and financial protection involving offenses and quasi-offenses only "as between" victims and tortfeasors. The article by its clear wording does not apply to similar issues "as between" insureds and insurers, though the underlying action arose from an offense or quasi-offense. See La. Civ.Code art. 11.
Victoria directs our attention to Article 3537, also found in the "Conflict of Laws," section of Louisiana's Civil Code, under the general heading entitled "Conventional Obligations." Victoria argues the disputed issue involves only the insured and insurer and "as between them" the general conflicts of law provisions pertaining to contracts are controlling. Article 3537 reads:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi state commercial intercourse, and of protecting one party from undue imposition by the other.
However, an old familiar caveat to most rules, be they specific or general, is they do not apply to all cases. Louisiana Civil Code article 14, the introductory statement on "Conflict of Laws," begins with the reservation "[u]nless otherwise expressly provided by the law of this state...." Victoria's argument, though reasoned and astutely articulated, is nonetheless shortsighted. We simply cannot "cut out" the preliminary language in the Civil Code's introductory section and proceed to Book IV without first seeking to discover whether the "issue" in controversy is regulated by statutory expression found elsewhere. The Revision Comments-1991 to this article instruct:
The residual nature of the provisions of Book IV is established by the introductory phrase of this Article "[u]nless otherwise expressly provided by the law of this state". This phrase means that the provisions of Book IV are not intended to supersede more specific choice-of-law rules contained in other Louisiana statutes, such as the Insurance Code (see La.R.S. 22:611 et seq.), the Commercial Code (see, e.g., La.R.S.10:1-105, 10:9-103), the Consumer Credit and Consumer Protection statutes (see e.g., La.R.S. 9:3511, 51:1418), and the Lease of Movables Act (La.R.S. 9:3302 et seq.). When applicable, those rules, being more specific, should prevail over the provisions of Book IV. (Emphasis added).
Therefore, when language exists in the Insurance Code indicating an intent by the legislature to apply Louisiana law to the "issue" in controversy "as between" the parties, the more specific expression trumps any provision found in Book IV which may sway in favor of applying the law of a foreign state. The pertinent Revision Comments, thus referenced, are sound, accord with article 14, and further are buttressed by Book *520 IV's introductory article 3515. That article recognizes, in resolving "choice-of-law" questions, we must focus attention first on the particular "issue" in controversy to determine whether an actual conflict of laws exists in the case. La.Civ.Code article 3515.[2] The particular issue in this case involves underinsured motorist coverage and the effects of a "prior consent" provision in a policy of insurance issued in a foreign state.
We stated in Willett v. National Fire and Marine Ins. Co., 594 So.2d 966, 968 (La.App. 3 Cir.), writ denied, 598 So.2d 355 (La.1992), "the object of the Louisiana Uninsured Motorist Statute, La.R.S. 22:1406(D), has always been to promote full recovery for damages by innocent automobile accident victims." To satisfy this goal, Willett noted, the statute makes "uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is adequately insured." Id. However, prior to the 1987 amendment of the statute, considerable dispute in the circuits arose involving its application to insurance policies issued or delivered in foreign states covering vehicles registered or garaged in those states albeit the accidents occurred in Louisiana with residents of this state. In Snider v. Murray, 461 So.2d 1051 (La.1985), the Louisiana Supreme Court decided to address the disagreement by avoiding it altogether. Snider, involved a Texas policy providing $10,000 uninsured motorist coverage but allowing a "set-off" of the amount recovered from the insurer of an underinsured motorist against the sum payable. The heirs of Snider, who was killed in a Louisiana accident caused by a tortfeasor residing in this state, brought suit to collect the UM benefits provided by the Texas policy even though they settled with the underinsured tortfeasor for the $10,000 limit of the tortfeasor's policy. They asserted Snider's UM carrier, nevertheless, was not entitled to the claimed offset because Louisiana law as reflected in La.R.S. 22:1406(D)(1), mandated underinsured motorist coverage at least equal to the limits of the bodily injury coverage. Accepting certiorari for the stated purposes of resolving "a conflict in the circuit concerning the application of Louisiana law on underinsured motorist coverage" contained in policies covering outof-state insureds and vehicles that also are issued and delivered outside this state, the supreme court found La.R.S. 22:1406(D)(1) did not apply because it affected only policies "delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state." Thus, the court reasoned no genuine choice-of-law question existed in that case because there was "no Louisiana law applicable." Parenthetically, the Court noted:
"Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La.R.S. 22:1406(D)(1)."
Shortly after rendition of the Snider decision, the Louisiana legislature amended La. R.S. 22:1406(D)(1) and added the following sentence designated as (iii):
"This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." Id. at 1053. (Emphasis added)
In Willett, 594 So.2d 966, we found this addition reflected the legislature's intent to overrule Snider and to broaden the reach of Louisiana's uninsured/underinsured motorist law on coverage questions. The added language no longer restricts application of Louisiana law on issues involving UM coverage to policies delivered or issued for delivery in this state attaching to vehicles registered or principally garaged in this state. The La.R.S. 22:1406(D) requirements now extend to any accident which occurs in this state and involves a resident of this state. Commenting on the effects of this provision, the supreme court in Bond v. Commercial Union Assur. Co., 407 So.2d 401, 409 (La. *521 1981), stated "[a]ny clause in an insurance contract in derogation of the mandatory requirements set forth in the statute is invalid...." Moreover, the Louisiana supreme court in Hebert v. Green, 311 So.2d 223, 229 (La.1975), reversing this court, instructed us that:
"The mandatory uninsured motorist coverage of R.S. 22:1406(D) may not be thwarted by policy exclusions serving no legitimate purpose.
* * * * * *
It is not the best legal interest of the public to require that legal representatives of parties to these actions first consent from the client's own uninsured motorist carrier before settling actions with other parties who may or may not be found ultimately liable for plaintiffs injuries."
See also, Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La.1981).
Finding mandatory requirements of La. R.S. 22:1406(D) and this state's public policy prohibits inclusion of "prior consent" clauses in insurance contracts, the court in Hebert concluded insureds are not required to secure approval from insurers before settling their damage claims.
La.R.S. 22:1406(D)(1)(a)(iii), thus, requires application of Louisiana law to the issue in dispute which involves UM coverage, though it arose from a conventional undertaking. While the court in Willett considered the "choice-of-law" question presented two inquiries requiring them to determine first whether Louisiana law applied and second whether Louisiana's interest primed that of the foreign state, on revisit we find this state's conflict of laws rules do not automatically require such dual analysis today.
As mentioned, the legislature revised, amended, and redesignated the conflict of laws provisions in 1991 by placing them in a newly created Book IV of the Civil Code. Although the provisions in Book IV, in most multi-state cases, require courts to utilize a step by step "interest analysis" approach in resolving conflict questions, Article 14 clearly requires less if the issue is controlled by a more specific statute reflecting Louisiana's intent to select its law. In other words, Book IV does not supersede the more specific choice-of-law rules requiring application of Louisiana law in deciding certain issues, whether they arise from a contract or a tortious act. In the latter instance, the legislature, in deciding to apply Louisiana law, has pre-determined this state's interest primes that of foreign states and no genuine conflict question exists. The legislature's choice of Louisiana law presumptively applies to the particular issue unless it violates some constitutional restriction.
Victoria does not argue any "full faith and credit" or like constitutional infringements will occur if Louisiana law is applied to the coverage issue. Instead, Victoria stressed, during oral argument, that application of Louisiana law in this case will result in uncertainty in the insurance business by subjecting insurers to greater underinsured motorist liability than the "insureds" bargained for, depending on the laws of multiple jurisdictions, and render them unable to protect their interest during the negotiation phase. Victoria's apprehensions are not new. We have heard them before. In answer, the courts of this state have said "in our mobile society the insurer could not reasonably contemplate the insured driving only in [the state where the policy was issued] and being subject to [that state's] interpretations of the policy provisions at all times." Sutton v. Langley, 330 So.2d 321 (La.App. 2 Cir.), writ denied, 332 So.2d 805 (La.1976); See also, Willett, 594 So.2d 966; Bell v. State Farm F. & C. Co., 527 F.Supp. 300 (W.D.La.1981), aff'd 680 F.2d 435 (5th Cir.1982); Browner v. Kaufman, 496 F.Supp. 961 (E.D.La.1980).
The legislature has "spoken" and expressed its choice that La.R.S. 22:1406(D) and its requirements should apply to all liability policies providing underinsured/uninsured motorist coverage, even if issued and delivered in a foreign state to residents of that state, if the accident occurs in this state and involves a resident of this state. In this case, the accident occurred in Louisiana and involved a tortfeasor residing in this state. The trial judge did not err in applying Louisiana law to the coverage issue and finding the "prior consent" clause in Victoria's policy *522 was invalid. His ruling was consistent with the mandate expressed by the Legislature in enacting La.R.S. 22:1406(D) and the jurisprudence of this state as articulated by the supreme court in interpreting its effect. Bond, 407 So.2d 401; Niemann v. Travelers Insurance Co., 368 So.2d 1003 (La.1979); Bosch v. Cummings, 520 So.2d 721 (La.1988). In Niemann, the supreme court stated:
"On the basis alone of statutory interpretation, we find that the UM insurer has no right under R.S. 22:1406(D)(4) other than the right to reimbursement from the proceeds, if any, that the insured in fact recovers from such underinsured tortfeasor.
The policy's subrogation clause, and the consent to settle clause, which protects that purported right of subrogation, serve no legally authorized purpose. They simply impede the insured's assertion of that part of his damage claim (against the tortfeasor's liability insurer) which the carrier in writing underinsured motorist coverage effectively acknowledged would be an independent or supplemental right of recovery of its insured. And assuming the insured is compelled, in the interest of securing sure and early settlement with the tortfeasor's liability insurer, to settle without the UM carrier's consent (a consent which may be arbitrarily withheld if full import is afforded the clause), the consent to settle clause serves as a bar to the UM coverage mandated by statute." Id. at 1007.
Reiterating its position, the supreme court one more expressed in Bosch, 520 So.2d at 723:
"This court has declined to interpret the inexplicit language of the statute [LSR.S. 22:1406(D)(4)] so as to grant the (UM) insurer an independent right of action against an underinsured motorist or his liability insurer, Hebert v. Green, 311 So.2d 223, 228 (La.1975), or permit the uninsured motorist carrier to enforce a clause excluding uninsured motorist coverage in the event of its insured's failure to obtain its consent before entering a reasonable settlement with an underinsured tortfeasor and his insurer, Niemann v. Travelers Insurance Co., supra, at 1008 (La.1979) ..."
Accordingly, the trial court's partial summary judgment declaring invalid, as a matter of law, Victoria's "prior consent clause" was legally sound.
Even if we exercised our full authority and independently reviewed the "choiceof-law" question presented, without giving any presumptive weight to the Legislature's choice expressed in La.R.S. 22:1406(D)(1)(a)(iii), our decision would not differ. Victoria's reliance on Article 3537 does not yield the result desired by it. This Article provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type and purpose of the contract, and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi state commercial intercourse, and of protecting one party from undue imposition by the other.[3]
The new provision which incorporates by reference the preceding Article 3515 does not overrule prior Louisiana jurisprudence *523 applying the interest analysis versus the lex loci contractus[4] theory in resolving conflict issues involving the interpretation of insurance policies. Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973); Wickham v. Prudential Insurance Co. of America, 366 So.2d 951 (La.App. 1 Cir.1978); Sutton, 330 So.2d 321; Davis v. Humble Oil & Refining Co., 283 So.2d 783 (La.App. 1 Cir. 1973); Lee v. Hunt, 631 F.2d 1171 (5th Cir. 1980); Cooper v. American Express, 593 F.2d 612 (5th Cir.1979); Ardoyno v. Kyzar, 426 F.Supp. 78 (E.D.La.1976); Brinkley & West, Inc. v. Foremost Insurance Co., 499 F.2d 928 (5th Cir.1974); Brawner, 496 F.Supp. 961; Bell, 527 F.Supp. 300. See also Couch, Louisiana Adopts Interest Analysis: Applause and Some Observations, 49 Tul. L.Rev. 1 (1974).
We are satisfied Louisiana's interests prime those of Tennessee and require application of Louisiana law in resolving the underlying coverage issue. Though we are mindful Tennessee's insurance rates for underinsured motorist coverage might be affected, this interest is overshadowed by the realities of the insurance industry and the reasonable expectations of parties. Neither Tennessee nor insurers who do business in that state reasonably could expect those who are residents and who obtain automobile insurance policies there to travel only the highways of that state without a thought of venturing beyond its borders. The interests of Louisiana mentioned in Sutton and Willett are just as significant and weighty in this case. The only factual difference between these cases and the present is the place of the policy's issuance and the residence of plaintiff. The views expressed in both cases are still sound and we adopt them here.
Louisiana's interest in regulating awards to victims on this state's highways, in protecting persons traveling on its highways from damage caused by uninsured and underinsured motorists, and in equally assessing the burden of awards to all culpable parties outweighs those of Tennessee. Further, as found in the cited cases, the interest of the Louisiana resident could be adversely affected by application of Tennessee law which may render valid the "prior consent" exclusion of Victoria's policy; and, in consequence, reduce the funds available to satisfy plaintiff's claims. Furthermore, a contrary holding would undercut and weaken Louisiana's long standing policy of requiring uninsured and underinsured motorist coverage to protect victims who travel on this state's highways and are injured by Louisiana residents.

DECREE
For the foregoing reasons, we affirm the district court's grant of plaintiff-appellee's, Wanda Trautman, partial summary judgment motion. All costs of the appeal are assessed to defendant-appellant, Victoria Fire and Casualty Company.
AFFIRMED.
NOTES
[1] The relevant provision states:

"A. We do not provide uninsured motorist coverage for bodily injury sustained by any person:
* * * * * *
2) If that person or the legal representative settles the bodily injury claim without our consent."
[2] Sec the Revision Comments-1991 section (d) to this article entitled "Issue-by-Issue analysis and de'pecage."
[3] La. Civ.Code Article 3515 states:

"Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."
[4] That theory generally requires application of the law of the place where the contract was written.