# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-1389

ROY WELDON

VERSUS

## MONICA CURRY AND PROGRESSIVE INSURANCE COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 00-6661
HONORABLE G. MICHAEL CANADY, PRESIDING

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
### SYLVIA R. COOKS
### JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett and Billy Howard Ezell, Judges.

**AFFIRMED.**

Eulis Simien, Jr.
Simien & Simien
8923 Bluebonnet Blvd., Suite 200
Baton Rouge, LA  70810
(225) 769-8422
COUNSEL FOR PLAINTIFF/APPELLANT:
    Roy Weldon


Mark Delphin
One Lakeshore Drive, Suite 1230
Lake Charles, LA  70629
(337) 439-3939
COUNSEL FOR PLAINTIFF/APPELLANT:
    Roy Weldon

**Frederick Cappel**
**Raggio, Cappel, Chozen & Berniard**
**P.O. Box 820**
**Lake Charles, LA 70602**
**(337) 436-9481**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **GEICO Insurance Company**

**COOKS, Judge.**

Plaintiff, Roy Weldon, appeals the trial court's judgment denying plaintiff's motion for partial summary judgment on coverage and granting the summary judgment of defendant, GEICO Indemnity Company. For the following reasons, we affirm the trial court's grant of GEICO's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

This case arose from a motor vehicle accident which occurred January 3, 2003 in Lake Charles, Louisiana. Plaintiff, Roy Weldon, a Georgia resident, was driving his vehicle when he was struck from behind by a vehicle driven by Monica Norwood Curry. The vehicle driven by Curry, a Louisiana resident, was insured by Progressive Security Insurance Company, with a per person bodily injury limit of $100,000.00. Plaintiff settled and dismissed all claims against Curry and Progressive.

Plaintiff also filed suit against GEICO, his underinsured motorist (UM) insurer. The GEICO policy was issued to plaintiff in Georgia for a vehicle that was registered and principally garaged in Georgia. GEICO contends under Georgia law and the policy language, UM and medical payments coverage under its policy is not available in this case because the amount of liability coverage ($100,000) available to Monica Curry under the tortfeasor policy is greater than the UM coverage in its policy. If Louisiana law applies, UM coverage is available to plaintiff.

Both plaintiff and GEICO filed motions for summary judgment on the issue of which state's law should apply in this case. The trial court's denied plaintiff's motion for partial summary judgment on coverage and granted the summary judgment of defendant, GEICO Indemnity Company. Plaintiff appealed.

## ANALYSIS

*I.*      *Necessity of a Choice-of-Law Analysis.*

In *Snider v. Murray*, 461 So.2d 1051 (La.1985), the Louisiana Supreme Court resolved an earlier conflict among the Louisiana Courts of Appeal regarding the application of Louisiana law to UM coverage. The court held that even if Louisiana law applied to the litigation, La.R.S. 22:1406(D)(1), by its express terms, affected only automobile policies delivered or issued for delivery in this state and if the policy at issue was neither delivered nor issued for delivery in Louisiana, plaintiffs could not avail themselves of La.R.S. 22:1406(D). The court also stated:

> Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La.R.S. 22:1406(D)(1).

*Snider*, 461 So.2d at 1053-1054. (Footnote omitted).

Subsequently, in 1987, the Legislature enacted La.R.S. 22:1406(D)(1)(a)(iii), which stated:

> This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.

After the enactment of La.R.S. 22:1406(D)(1)(a)(iii) (which has been renumbered La.R.S. 22:680(1)(a)(iii)), Louisiana courts were faced with the issue of whether Louisiana's UM law now automatically applies to policies when the accident occurs in Louisiana and involves a Louisiana resident, or whether the courts must conduct a conflict-of-laws analysis to determine what law applies.

In *Willett v. National Fire and Marine Insurance Company*, 594 So.2d 966 (La.App. 3 Cir.), *writ denied*, 598 So.2d 355 (La.1992), we found the enactment of La.R.S. 22:1406(D)(1)(a)(iii) reflected the legislature's intent to overrule *Snider* and to broaden the reach of Louisiana's UM law on coverage questions. This court in *Willett*, 594 So.2d at 969, stated:

> We reach this conclusion because the statute as amended is no longer

limited in its effect to only those policies that are delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state. By the amendment the statute additionally imposes underinsured motorist requirements upon any liability insurance covering any accident which occurs in this state and involves a resident of this state.

In the present case, the accident occurred in this state. Two Louisiana residents, T & J Motors and Rockie C. Chick, were involved in the accident. Accordingly, since the accident occurred in this state and involved residents of this state, the underinsured motorist requirement of La.R.S. 22:1406(D)(1)(a)(iii), as amended by Act 444 of 1987, applies.

In *Trautman v. Poor*, 96-627 (La.App. 3 Cir. 12/11/96), 685 So.2d 516, we cited

*Willett* for its conclusion that the amendment broadened the reach of Louisiana's UM

law on coverage questions. We further noted in *Trautman*, 685 So.2d at 520, that

"[t]he La.R.S. 22:1406(D) requirements now extend to any accident which occurs in

this state and involves a resident of this state." Although the court in *Willett* believed

it was required to first determine whether Louisiana law applied and second to

conduct a choice-of-law analysis to see whether Louisiana's interest primed that of

the foreign state, the panel in *Trautman* found La.R.S. 22:1406(D)(1)(a)(iii) was

applicable without first considering conflict-of-laws principals. We stated in

*Trautman*, 685 So.2d at 521-22:

As mentioned, the legislature revised, amended, and redesignated the conflict of laws provisions in 1991 by placing them in a newly created Book IV of the Civil Code. Although the provisions in Book IV, in most multi-state cases, require courts to utilize a step by step "interest analysis" approach in resolving conflict questions, Article 14 clearly requires less if the issue is controlled by a more specific statute reflecting Louisiana's intent to select its law. In other words, Book IV does not supersede the more specific choice-of-law rules requiring application of Louisiana law in deciding certain issues, whether they arise from a contract or a tortious act. In the latter instance, the legislature, in deciding to apply Louisiana law, has pre-determined this state's interest primes that of foreign states and no genuine conflict question exists. The legislature's choice of Louisiana law presumptively applies to the particular issue unless it violates some constitutional

restriction.

. . . .

> The legislature has "spoken" and expressed its choice that La.R.S. 22:1406(D) and its requirements should apply to all liability policies providing underinsured/uninsured motorist coverage, even if issued and delivered in a foreign state to residents of that state, if the accident occurs in this state and involves a resident of this state. In this case, the accident occurred in Louisiana and involved a tortfeasor residing in this state. The trial judge did not err in applying Louisiana law to the coverage issue and finding the "prior consent" clause in Victoria's policy was invalid. His ruling was consistent with the mandate expressed by the Legislature in enacting La.R.S. 22:1406(D) and the jurisprudence of this state as articulated by the supreme court in interpreting its effect. *Bond*, 407 So.2d 401; *Niemann v. Travelers Insurance Co.*, 368 So.2d 1003 (La.1979); *Bosch v. Cummings*, 520 So.2d 721 (La.1988).

Shortly after this court's decision in *Trautman*, another panel of our court, while agreeing with *Trautman's* result that Louisiana law applied, disagreed with our method of analysis that La.R.S. 22:1406(D)(1)(a)(iii) was applicable without first considering conflict-of-laws principals. *Anderson v. Oliver*, 97-1102 (La.App. 3 Cir. 1/7/98), 705 So.2d 301, *writ denied*, 98-755 (La. 5/8/98), 718 So.2d 434. It rejected that approach and suggested we should undertake a conflict-of-laws analysis before applying Louisiana law.

The other appellate circuits in Louisiana are split as to whether La.R.S. 22:1406(D)(1)(a)(iii) (now La.R.S. 22:680(1)(a)(iii)) expressly provides it is to be applicable regardless of the conflict-of-laws provisions of the Louisiana Civil Code.

In *Drew v. Martello*, 98-1141, 98-1142, p. 6 (La.App. 5 Cir. 2/23/99), 729 So.2d 90, 93, the fifth circuit concluded that La.R.S.22:1406(D)(1)(a)(iii) specifically provides that it is applicable to "any accident which occurs in this state and involves a resident of this state." The court found it was not required to conduct a choice-of-law analysis. The second circuit in *Adams v. Thomason*, 32,728 (La.App. 2 Cir.3/1/00), 753 So.2d 416, *writ denied*, 00-1221 (La.6/16/00), 764 So.2d 965, noted

the conflicting jurisprudence and quoted with approval our decision in *Anderson* that

a full analysis of the conflict-of-laws principles should be conducted rather than

merely relying on La.R.S. 22:1406(D)(1)(a)(iii). Likewise, the first circuit in *Zuviceh*

*v. Nationwide Ins. Co.*, 00-773 (La.App. 1 Cir. 5/11/01), 786 So.2d 340, 345, *writ*

*denied*, 01-2141 (La. 11/9/01), 801 So.2d 373, found it was "appropriate to conduct

a choice-of-law analysis." On the other hand, the fourth circuit in *Austin v. Western*

*World Ins. Co.*, 99-2541 (La.App. 4 Cir. 5/17/00), 765 So.2d 390, 393, *writ denied*,

00-1795 (La. 9/22/00), 768 So.2d 1288, stated as follows:

> In *Dekeyser v. Automotive Cas. Ins. Co.*, 97-1251 (La.App. 4 Cir 2/4/98) 706 So.2d 676, we noted that the Legislature adopted LSA-C.C. art. 14 at the same time as the Conflict of Laws Articles. Also in that case, we found LSA-R.S. 22:1406 D(1)(a)(iii) provided a specific rule governing the question of underinsured motorists insurance coverage. It follows that it was the Legislature's intent that the specific rule, i.e. LSA-R.S. 22:1406 D(1)(a)(iii), control the conflict of laws issue, rather than the general rules of Book IV concerning conflict of laws. *Dekeyser*, supra.

Recognizing the conflict among the appellate circuits, the Louisiana Supreme

Court in *Champagne v. Ward*, 03-3211 (La. 1/19/05), WL 107026, recently addressed

this issue and determined that a choice-of-law analysis is the appropriate

methodology for determining which state's law applies to the interpretation of UM

contracts in multi-state cases. The court in *Champagne*, at pp.10-12, stated as

follows:

> We first observe that La. C.C. art 14 and its comments were cited by the fourth and fifth circuit courts of appeal in support of their conclusions that La.R.S. 22:1406(D)(1)(a)(iii) automatically applies in multistate cases such as the present one. The comments emphasized by those courts state that "the provisions of Book IV are not intended to supercede more specific choice-of-law rules contained in other Louisiana statutes, such as the Insurance Code...." Contrary to the holdings of those appellate courts, this language is inapplicable to La.R.S. 22:1406(D)(1)(a)(iii) because the statute is limited by the introductory language of La.R.S. 22:1406(D) which states that the statute "shall apply to the issuance of uninsured motorist coverage in

this state."

When interpreting a statute, all parts of a statute should be given effect, and an interpretation making any part superfluous or meaningless should be avoided. *First National Bank of Boston v. Beckwith Machinery Company*, 94-2065 (La.2/20/95), 650 So.2d 118. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. *Bunch v. Town of St. Francisville*, 446 So.2d 1357 (La.App. 1st Cir.1984). The word "shall" in a statute represents mandatory language. La.R.S. 1:3. Additionally, when the wording of a statute is clear and free of ambiguity, the letter of the statute shall not be disregarded under the pretext of pursuing its spirit. La.R.S. 1:4.

We find that the decisions by the fourth and fifth circuits discussed above violate this essential aspect of statutory interpretation because they fail to give effect to all parts of the statute. In fact, the introductory language of La.R.S. 22:1406(D), that the statute is applicable to UM coverage issued in this state, is omitted entirely from their discussions. The introductory language is clear and unambiguous and does not lead to absurd consequences. To hold otherwise would be to conclude that any accident occurring in Louisiana and involving a Louisiana resident is automatically governed by Louisiana law, irrespective of the foreign state's relevant public policies, pertinent contacts with this state, and the nature, type, and purpose of the contract involved.

On the contrary, we conclude that the appropriate starting point in a multistate case such as the present one is to first determine that there is a difference between Louisiana's UM law and the UM law of the foreign state, and then to conduct a choice-of-law analysis, as codified in Book IV of the Civil Code, to determine which state's law applies to the interpretation of the UM policy. Thus, we affirm the choice-of-law methodology codified in La. C.C. arts. 3515 and 3537 and embraced by the first, second, and third circuit courts of appeal. We reject the automatic application of Louisiana's UM law adopted by the fourth and fifth circuit courts of appeal.

Under the *Champagne* decision, we must undertake a choice-of-law analysis to determine whether Louisiana or Georgia law applies in this case.

## II.    *Choice-of-Law.*

In *Champagne*, the plaintiff (Gerald Champagne), a resident of Mississippi, was involved in an accident in New Orleans with a vehicle driven by Sharonda Ward.

Plaintiff was insured by a policy of insurance negotiated and issued in Mississippi. Ward's insurance policy was negotiated and issued in Louisiana.

Plaintiff filed suit for personal injuries in Louisiana, naming as defendants, Ward, Ward's insurer and plaintiff's UM provider, Mississippi Farm Bureau. In response to the suit, Mississippi Farm Bureau field a motion for summary judgment, alleging that its policy with plaintiff contained a "dollar for dollar" setoff regarding UM coverage. Because the tortfeasor had $10,000 in liability coverage and plaintiff's policy had $10,000 in UM coverage, under Mississippi law UM benefits were not available. Mississippi Farm Bureau alleged that La.Civ.Code art. 3515 and 3537 mandate that Mississippi law be applied to the interpretation of plaintiff's UM contract. After determining that a choice-of-law analysis was required the court stated as follows:

> In the case *sub judice,* we note that there are profound competing public policies and interests between the states of Louisiana and Mississippi in this case. As stated above, the purpose of our UM legislation is to promote full recovery for innocent tort victims. Factors supporting Louisiana's strong interest in promoting full recovery for innocent automobile accident victims are: (1) there are economic interests involved, which include costs of medical care (which are more likely to be paid if there is sufficient insurance); (2) there is significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims. *Zuviceh v. Nationwide Ins. Co.*, 2000-0773 (La.App. 1st Cir. 5/11/01), 786 So.2d 340, 345, *writ denied*, 2001-2141 (La. 11/19/01), 801 So.2d 373. Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by Louisiana's statute. *Id.* at 345-346, quoting William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 119, p. 293, in Louisiana Civil Law Treatise (2nd ed.1996).

> On the other hand, Mississippi has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real

interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose. *See Zuviceh*, 786 So.2d at 346.

In this case, plaintiff and Mississippi Farm Bureau entered into a contract of insurance that contained a reduction clause, which provided for the reduction of his UM coverage by the amount collected from the automobile bodily injury liability insurance covering the owner and operator of the underinsured vehicle. This agreement was in the contemplation of the contracting parties, and the premium of $18.00 per six months for $10,000/ $20,000 of UM coverage for bodily injury caused by an underinsured driver was based on Mississippi Farm Bureau's potential exposure under the policy, with the reduction clause.

Our *de novo* review of the record establishes the following contacts with the State of Louisiana:
1. The accident occurred in New Orleans, Louisiana;
2. Defendant is a Louisiana resident;
3. Defendant's automobile liability insurance policy was issued to defendant in Louisiana;

Plaintiff's contacts with Mississippi include the following:
1. Plaintiff is a resident of Mississippi;
2. Mississippi is the place of negotiation and formation of the insurance contract;
3. The vehicle on which plaintiff purchased coverage is garaged, and presumably, registered in Mississippi;
4. Plaintiff's UM insurance policy is a Mississippi contract.

Under the facts of this case, we find that Mississippi has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana. The application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract. Moreover, plaintiff's premium for UM coverage was based on the application of Mississippi law to the contract. Under a conflicts-of-laws analysis, we conclude that Mississippi's policies will be most seriously impaired if its law is not applied to the insurance policy.

Accordingly, we find that Mississippi Farm Bureau has met its burden of proving that Mississippi has a more substantial interest in this case, and plaintiff has failed to present factual support for his contentions. Therefore, Mississippi Farm Bureau is entitled to summary judgment as a matter of law.

*Champagne*, at pp. 14-15.

The facts in this case are similar to those presented in *Champagne*. The UM and medical payments coverage under the Georgia policy of insurance is not available if the amount of liability coverage of the tortfeasor policy is equal or greater to the UM coverage. The policy was issued and written in Georgia to a Georgia resident who was transitorily within the borders of Louisiana. The choice-of-law analysis conducted by the Supreme Court in *Champagne* requires us to find Georgia has a more substantial interest in this case. Therefore, the trial court did not err in applying Georgia law to this policy.

## DECREE

For the foregoing reasons, we affirm the trial court's grant of grant of summary judgment in favor of GEICO dismissing plaintiff's claims. All costs of this appeal are assessed against plaintiff-appellee, Roy Weldon.

**AFFIRMED.**