765 So.2d 390 (2000)
Richard E. AUSTIN and Lisa M. Farago
v.
WESTERN WORLD INSURANCE COMPANY, et al.
No. 99-CA-2541.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 2000.
Writ Denied September 22, 2000.
*391 Irving J. Warshauer, Gary B. Roth, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, Counsel for Plaintiffs/Appellees.
John W. Waters, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, LA, Counsel for Defendant/Appellant P.G. Insurance Company of New York.
Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MICHAEL E. KIRBY.
KIRBY, Judge.
P.G. Insurance Company appeals a partial summary judgment that was designated as final. That Judgment held that LSA-R.S. 22:1406 D(1)(a)(iii) obliges the court to apply Louisiana law to a foreign insurance contract that covers an accident in Louisiana that involves Louisiana residents.
The standard of review for a summary judgment on appeal is de novo. The appellate court asks whether there is any genuine issue of material fact and whether movant is entitled to judgment as a matter of law. Walker v. Kroop, 96-0618 (La. App. 4 Cir. 7/24/96), 678 So.2d 580.

STATEMENT OF FACTS
On February 6, 1997, Richard Austin and Lisa Farago, residents of the State of New York, traveled to New Orleans, Louisiana to attend Mardi Gras. When they arrived at New Orleans International Airport, they hailed a taxicab to take them to a downtown hotel. The taxicab was owned and operated by Roschelle Francis, a Louisiana resident, and Ms. Francis drove the taxicab from the airport toward downtown New Orleans via Interstate 10. As the taxicab approached the I-10/610 split, a flatbed tow truck operated by Phillip Melerine, a resident of Louisiana, veered into the taxicab's lane of travel. Ms. Francis failed to avoid the tow truck, and a violent and life threatening collision occurred due to the joint fault of Mr. Melerine and Ms. Francis.
As a consequence of the collision, Richard Austin sustained a severe head injury. At Charity Hospital he was treated and *392 diagnosed with a massive epidural hematoma. This condition caused cranial bleeding, and Mr. Austin was required to undergo an emergency craniotomy to relieve the pressure on his brain and to implant cranial plates. Following surgery, he suffered a possible seizure, continued cranial bleeding, and severe headaches. Mr. Austin was also diagnosed with a TMJ disorder, for which he has undergone splint therapy, and a herniated disc in his lower back. Approximately four months post-accident, Mr. Austin underwent a second cranial surgery to remove bone fragments, the cranial plates and screws, and to address a postoperative infection of the skull. Mr. Austin experiences right side weakness, including his arm, hand and leg, a diminished ability to focus and to concentrate, blurred vision, and slurred/stuttered speech.
Richard Austin and Lisa Farago filed suit in the Civil District Court for the Parish of Orleans to recover damages they sustained in the collision. Named as defendants in the lawsuit were: (1) Roschelle Francis; (2) North American Fire and Casualty Insurance Company, the liability insurer of the taxicab; (3) Phillip Melerine; (4) Western World Insurance Company, Mr. Melerine's liability insurer; (5) GEICO, Mr. Austin's supplementary underinsured motorist (hereinafter "UM") insurer; (6) P.G. Insurance Company of New York (hereinafter "P.G. Insurance"), which provided additional UM coverage in favor of Mr. Austin through a policy issued to Mr. Austin's parents; (7) Integon Insurance Company, Ms. Farago's personal UM carrier; (8) the State of Louisiana, through the Department of Transportation and Development (hereinafter "DOTD"); and, (9) LeBlanc Metairie, d/b/a LeBlanc Autoplex, a Louisiana limited corporation.
In response to Mr. Austin's lawsuit, GEICO filed a Motion for Summary Judgment, arguing that, under New York law, GEICO was entitled to an "offset"for the amount of liability insurance held by the tortfeasor, thereby reducing the limits of the GEICO UM policy.[1] Since the Louisiana tortfeasor had liability coverage which exceeded the GEICO UM limits, GEICO asserted that, under New York law, it did not owe any UM benefits to its insured, Richard Austin. Mr. Austin opposed the Motion, pointing out that because the accident arose in Louisiana and involved at least two Louisiana residents, Louisiana law should be applied to the interpretation of the GEICO UM policy; pursuant to Louisiana law, GEICO owed coverage to the full extent of its policy limits and was not permitted to apply the New York "offset clause." The district court denied GEICO's Motion for Summary Judgment.
In the wake of the district court's denial of GEICO's Motion for Summary Judgment, plaintiffs moved for summary judgment against the New York UM insurers GEICO, P.G. Insurance, and Integon Insurance Companyasserting that Louisiana law should be applied in interpreting the UM policies. Plaintiffs' motion was supported by the applicable choice of law rule, La.Rev.Stat. § 22:1406 D(1)(a)(iii), which provides:
"This subparagraph and its requirements for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."

LEGAL ANALYSIS
Automotive insurance coverage requires a coherent system or network of regulations. That is why all fifty States and the District of Columbia have their own insurance codes or regulations. To juxtapose provisions from noncongruous automotive insurance codes results in anomaly. The central issue in this case is whether Louisiana should disregard a provision of its UM *393 Statute, so as to insert a reduction, or offset clause that is noncongruous with its UM statute. As stated in the Louisiana Civil Law Treatise on Insurance Law and Practice § 119:
Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by statute. The insured is entitled to recover, subject to the limits of his policy, the difference between his damages and liability insurance of the negligent motorist.[2]
P.G. Insurance Co. advances three arguments as to why the Louisiana Statute should not apply and New York law, i.e. the reduction clause, should apply. They are: (1) a conflict of laws argument; (2) a United States Constitutional law Due Process argument; and (3) a United States Constitutional law Contract Clause argument. They will be addressed in this order.
P.G. Insurance argues that Civil Code Articles 3515 and 3537 require an application of New York law, making LSA-R.S. 22:1406 D(1)(a)(iii) nugatory.
LSA-C.C. art. 14 dealing with multistate cases states:
Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.
Moreover, Comment (b) to LSA-C.C. art. 14 states:
... The residual nature of the provisions of Book IV is established by the introduction phrase of this Article "[u]nless otherwise expressly provided by the laws of this state". This phrase means that the provisions of Book IV are not intended to supersede more specific choice-of-law rules contained in other Louisiana statutes, such as the Insurance Code (see La. R.S. 22:611 et seq.)... When applicable those rules, being more specific, should prevail over the provisions of Book IV.
In Dekeyser v. Automotive Cas. Ins. Co., 97-1251 (La.App. 4 Cir 2/4/98) 706 So.2d 676, we noted that the Legislature adopted LSA-C.C. art. 14 at the same time as the Conflict of Laws Articles. Also in that case, we found LSA-R.S. 22:1406 D(1)(a)(iii) provided a specific rule governing the question of underinsured motorists insurance coverage. It follows that it was the Legislature's intent that the specific rule, i.e. LSA-R.S. 22:1406 D(1)(a)(iii), control the conflict of laws issue, rather than the general rules of Book IV concerning conflict of laws. Dekeyser, supra.
Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) addresses P.G.'s Due Process[3] argument. The United States Supreme Court in Allstate determined that the application of a forum state's laws in the interpretation of an insurance contract of a foreign state does not violate the constitutional rights of the insurer. In Allstate the Supreme Court set forth the following analysis:
In deciding constitutional choice-of-law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, this Court had traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation. [Clay v. Sun Ins. Office, Limited, 377 U.S. 179, 181-182, 84 S.Ct. 1197, 1198, 12 L.Ed.2d 229 (1964)]. In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, see Alaska Packers Assn. v. Industrial Accident Comm'n, 294 U.S. 532, 542, 55 S.Ct. 518, 521, 79 L.Ed. 1044 (1935), the Court has *394 invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interest, with the parties and the occurrence or transaction.
Allstate, 449 U.S. at 308, 101 S.Ct. 633 (footnotes omitted).
In this case, there are significant contacts: The accident occurred in Louisiana, the accident involves two Louisiana residents; all vehicles involved in the accident were registered in Louisiana; Mr. Austin received significant medical treatment in Louisiana; and the P.G. Insurance policy, while issued in New York, provides UM coverage for its insured in each of the fifty states. These contacts create a state interest in the event, such that application of Louisiana's law is neither arbitrary nor fundamentally unfair. Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). In the aggregate, these contacts are more than sufficient to satisfy the Due Process requirements of the United States Constitution.
The Contracts Clause, found in Article 1, § 10 of the United States Constitution, states:
No State shall ... pass any ... law impairing the Obligation of Contracts.
To determine whether a choice of law provision violates the Contracts Clause of the United States Constitution, we ask whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). The party complaining of unconstitutionality has the burden of demonstrating, first, that the statute alters contractual rights or obligations. National R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co., 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). In this case LSA-R.S. 22:1406 D(1)(a)(iii) does alter P.G. Insurance Company's contractual obligations because P.G. Insurance would owe little or nothing if Austin can settle with the two Louisiana residents and if the "reduction" clause were applied using New York law.
In determining the extent of impairment, a reviewing court is to consider whether the industry of the complaining party has been regulated in the past. Energy Reserves Group, Inc. v. Kansas Power & Light, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983); Veix v. Sixth Ward Building & Loan Assn. of Newark, 310 U.S. 32, 38, 60 S.Ct. 792, 794, 84 L.Ed. 1061 (1940) ("when he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic"). As stated before, all fifty states regulate insurance, and have done so for some time. Thus, P.G. Insurance cannot argue that they were unaware, when they put the provision that extends their liability coverage to all fifty states, that the insurance industry was anything but an industry that was, and is, heavily regulated.
Assuming Louisiana's choice of law provision constitutes an impairment, the state must have a significant and legitimate public purpose behind the regulation, such as the remedying of other broad and general social or economic problems. Energy Reserves, 459 U.S. at 412, 103 S.Ct. at 704; Allied Structural Steel Co., 438 U.S. at 247, 98 S.Ct. at 2723. The requirement of a legitimate public purpose guarantees that the state is exercising its police power, rather than providing a benefit to special interests. Energy Reserves, 459 U.S. at 412, 103 S.Ct. at 705. The goal of Louisiana's UM legislation is to promote full recovery for the innocent automobile accident victim. Clearly this goal is a legitimate public purpose that is not biased to any special interest except those who are victims in Louisiana.
Moreover, the fact that Congress has allowed all fifty states to have their own uniform system of regulations governing insurance strongly suggests that this is a legitimate public purpose. Because the *395 public purpose of having a uniform system of insurance is legitimate, it is a legitimate exercise of a state's police power.
With this legitimate purpose identified, the next inquiry is whether the adjustment of the rights and obligations of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Energy Reserves, 459 U.S. at 412, 103 S.Ct. at 705. When legislation modifies or abrogates contracts already in effect, the crucial question is whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end. Home Bldg. & Loan Assn. v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, (1934). Unless the state itself is a contracting party, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. U.S. v. Carolene Products Co., 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938).
The goal of Louisiana's UM legislation is to promote full recovery for the innocent automobile accident victim in Louisiana by making UM coverage available for their benefit when the tortfeasor is inadequately insured. LSA-R.S. 22:1406 D(1)(a)(i); Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). This court is correct in deferring to the Legislature as concerns the necessity and reasonableness of protecting innocent automobile accident victims in Louisiana by mandating that its UM Statute apply when Louisiana has the requisite contacts.
La. R.S. 22:1406 D(1)(a)(iii) states:
This subparagraph and its requirements for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
P.G. Insurance is the liability insurer of Mr. Austin. Any provision of its insurance policy enhancing liability coverage and benefiting Mr. Austin, the insured, must enhance UM coverage and benefit insured. Dekeyser. The liability provisions in P.G.'s policy would cover this accident, which occurred in Louisiana and involves two residents of Louisiana. Therefore, Louisiana's UM Statute, which ensures that Mr. Austin fully recovers, applies. The Trial Court was correct in holding that Louisiana's UM Statute applies to the facts of this accident.
AFFIRMED.
NOTES
[1] GEICO specifically argued that "New York law provides that when an underlying liability policy has higher limits than an underinsured motorist policy, the underinsured motorist coverage is not applicable."
[2] Louisiana Civil Law Treatise: 15 Insurance Law and Practice § 119, William S. McKenzie & H. Alston Johnson, III, West Publishing (2d ed. 1996), p. 293.
[3] The Due Process Clause, U.S. Const., Amend. XIV § 1: "... nor shall any State deprive any person of life, liberty, or property, without due process of law...".