786 So.2d 340 (2001)
Barbara Songy ZUVICEH
v.
NATIONWIDE INSURANCE COMPANY.
No. 2000 CA 0773.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Rehearing Denied June 20, 2001.
*341 Albert J. Nicaud, Metairie, LA, for plaintiff/appellant, Barbara Songy Zuviceh.
Raymond P. Augustin, Metairie, LA, for defendant/appellee, Nationwide Insurance Company.
*342 BEFORE CARTER, C.J., WEIMER and KLINE,[1] JJ.
KLINE, J.
This is an appeal from a declaratory judgment holding that under LSA-C.C. art. 3515, et seq., Mississippi law is applicable to the interpretation of an uninsured/underinsured motorist (UM) policy. For the reasons that follow, we affirm.

FACTS
On August 15, 1998, Barbara Songy Zuviceh (Zuviceh), a Mississippi resident, was injured in a head-on collision that occurred in Slidell, Louisiana. The accident occurred when a vehicle owned and operated by Steven Wicks, a Louisiana resident, allegedly crossed the center line and struck Zuviceh's vehicle.
On the date of the accident, Steven Wicks had in full force and effect a policy of automobile liability insurance issued by Allstate Insurance Company with limits of liability of Ten Thousand ($10,000.00) Dollars per person. Also on the date of the accident, Zuviceh had in full force and effect a policy of UM coverage issued to her and her husband, Fred Zuviceh, by appellee, Nationwide Insurance Company (Nationwide). Nationwide issued the policy to the Zuvicehs in the state of Mississippi and, at the time of its issuance, the Zuvicehs' vehicle was registered in Mississippi.
Under Louisiana law, automobile insurance delivered or issued for delivery in this State for a vehicle registered in Louisiana must have UM coverage equal to the liability amount unless the named insured had rejected UM coverage or selected lower limits. LSA-R.S. 22:1406(D)(1)(a)(i). Such rejection must be in writing on a form provided by the insurer. LSA-R.S. 22:1406(D)(1)(a)(ii). Purportedly, Nationwide has no such form executed by Zuviceh.
Zuviceh petitioned the trial court for a judgment declaring whether Louisiana or Mississippi law applied to the UM coverage provided to her by Nationwide. After applying a choice-of-law analysis, the trial court determined that Mississippi law applied to interpret the terms of the Nationwide policy because Mississippi has a more substantial interest in the uniform application of its laws than Louisiana has in providing an insurance remedy to an out-of-state resident who sustains an injury while temporarily within the state's borders. It is from this adverse finding that Zuviceh appeals.

IS A CHOICE OF LAW ANALYSIS REQUIRED?

LEGISLATIVE AND JURISPRUDENTIAL PERSPECTIVE
In 1985, the Louisiana Supreme Court decided the case of Snider v. Murray, 461 So.2d 1051 (La.1985), to resolve a conflict among the Louisiana Courts of Appeal regarding the application of Louisiana law on UM coverage. The court held that even if Louisiana law applied to the litigation, LSA-R.S. 22:1406(D)(1), by its express terms, affected only automobile policies delivered or issued for delivery in this state and since the policy at issue was neither delivered nor issued for delivery in Louisiana, plaintiffs could not avail themselves of LSA-R.S. 22:1406. The court further stated, "Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the *343 accident occurs in Louisiana, but the Legislature did not include such a provision in La.R.S. 22:1406(D)(1)." (Footnote omitted.) Snider, 461 So.2d at 1053-1054. Subsequently, by Acts 1987, No. 444, the Legislature enacted LSA-R.S. 22:1406(D)(1)(a)(iii), which states:
This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
After the enactment of LSA-R.S. 22:1406(D)(1)(a)(iii), Louisiana courts were faced with the issue of whether Louisiana's UM law now automatically applies to policies when the accident occurs in Louisiana and involves a Louisiana resident, or whether the court must conduct a conflict-of-laws analysis to determine what law applies. The courts of appeal have reached conflicting resolutions to that issue. Our review of the jurisprudence reveals the following decisions rendered recently by the courts of appeal.
The third circuit's most recent case on the subject, Anderson v. Oliver, 97-1102 (La.App. 3d Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434, analyzed its three previous cases of Willett v. National Fire & Marine Insurance Co., 594 So.2d 966 (La.App. 3d Cir.), writ denied, 598 So.2d 355 (La.1992); Holcomb v. Universal Insurance Co., 93-1424 (La. App. 3d Cir.6/1/94), 640 So.2d 718, writ denied, 94-1740 (La.10/7/94), 644 So.2d 643; and Trautman v. Poor, 96-627 (La. App. 3d Cir.12/11/96), 685 So.2d 516. The court then determined that the correct method of analysis was that of Willett and Holcomb; because these cases present conflict-of-laws issues, the first thing to be determined is which state's law is applicable. Anderson, 705 So.2d at 305. In reaching that decision, the third circuit in Anderson specifically rejected the analysis employed in Trautman.[2]
The fifth circuit, in Drew v. Martello, 98-1141, 98-1142, p. 6 (La.App. 5th Cir.2/23/99), 729 So.2d 90, 93, concluded that Louisiana's UM law specifically provides that it is applicable to "any accident which occurs in this state and involves a resident of this state." Therefore Louisiana law was properly applied to the facts of the case. The court conducted no choice-of-law analysis.
In Adams v. Thomason, 32,728 (La.App. 2d Cir.3/1/00), 753 So.2d 416, writ denied, XXXX-XXXX (La.6/16/00), 764 So.2d 965, the second circuit analyzed the appellate courts' conflicting jurisprudence considering the issue of whether LSA-R.S. 22:1406(D)(1)(a)(iii) automatically requires the application of Louisiana law. The court then concurred with the third circuit's decision in Anderson and determined that it is more appropriate to conduct a full analysis of the conflict-of-laws principles involved than to merely rely upon LSA-R.S. 22:1406(D)(1)(a)(iii). Adams, 753 So.2d at 426.
The fourth circuit most recently addressed the issue in Austin v. Western World Ins. Co., 99-2541 (La.App. 4th Cir.5/17/00), 765 So.2d 390, writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 1288. Therein, the court relied on its previous *344 decision of Dekeyser v. Automotive Cas. Ins. Co., 97-1251 (La.App. 4th Cir.2/4/98), 706 So.2d 676, in which it held that LSA-R.S. 22:1406(D)(1)(a)(iii) provided a specific rule governing the question of UM coverage, thus it was the Legislature's intent that the specific rule, i.e. LSA-R.S. 22:1406(D)(1)(a)(iii), control the conflict of laws issue rather than the provisions of Civil Code Book IV entitled "Conflict of Laws." Austin, 765 So.2d at 393. The court then determined that the Louisiana law provision in the UM statute did not violate either the Due Process or Contracts Clause of the United States Constitution and held that Louisiana's UM law applied to the facts of the accident. Austin, 765 So.2d at 393-395.
In summary, the second and third circuits favor a choice of law analysis over the automatic application of LSA-R.S. 22:1406(D)(1)(a)(iii). The fourth and fifth circuits would automatically apply Louisiana's UM law based on the Legislature's pronouncement in LSA-R.S. 22:1406(D)(1)(a)(iii) without conducting a choice-of-law analysis.

DISCUSSION
LSA-C.C. art. 14 provides, "Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code." In "Louisiana Conflicts Law: Two `Surprises'", 54 La.L.Rev. 497, 503 (1994), Professor Symeon C. Symeonides[3] explains the impact of LSA-C.C. art. 14, as follows:
[T]hrough its introductory phrase "[u]nless otherwise expressly provided by the law of this state," Article 14 establishes the residual character of Book IV vis-a-vis other more specific provisions of Louisiana legislation. Book IV is not intended to supersede more specific conflicts rules contained in other Louisiana Statutes, such as those found in the Insurance Code.... When applicable, those rules, being more specific, will prevail over the provisions of Book IV of the Civil Code. (Emphasis added.)
The threshold issue is whether LSA-R.S. 22:1406(D)(1)(a)(iii) of the UM Statute is a provision "otherwise expressly provided by the law of this state" as stated in LSA-C.C. art. 14, which requires application of Louisiana law without a conflict-of-law analysis.
Appellee directs our attention to LSA-R.S. 22:1406(D) and LSA-R.S. 22:1406(D)(1)(a)(iii), to wit:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:

. . . .
[(1)(a) ](iii). This subparagraph and its requirement for uninsured motorists coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
(Emphasis added).
The introductory paragraph of LSA-R.S. 22:1406(D) states unqualifiedly that the provisions enumerated thereafter apply to policies issued in Louisiana. The Legislature did not change that qualification by amending the statute to include the *345 language of LSA-R.S. 22:1406(D)(1)(a)(iii). As it is written, the amendment, which is one of the "following provisions" referred to in LSA-R.S. 22:1406(D), governs the issuance of UM coverage in Louisiana.
The starting point for interpretation of any statute must be the language of the statute itself; when the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and its letter shall not be disregarded in search of the intent of the legislature. LSA-C.C. art. 9; Barrilleaux v. NPC, Inc., 98-0728, p. 4 (La.App. 1st Cir.4/1/99), 730 So.2d 1062, 1064, writ denied, 99-1002 (La.5/28/99), 743 So.2d 672. All parts of a statute should be given effect, and an interpretation making any part superfluous or meaningless should be avoided. First National Bank of Boston v. Beckwith Machinery Company, 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153. Reading LSA-R.S. 22:1406 in its entirety, there is but one conclusion: its provisions "govern the issuance of uninsured motorist coverage in this state." Because the policy under consideration was issued in Mississippi as opposed to Louisiana, subparagraph (D)(1)(a)(iii) has no application. We are aware of no jurisprudence which has addressed this language of the statute, but we believe the language of the statute is dispositive of the issue.
We thus align ourselves with the second and third circuits and determine that it is appropriate to conduct a choice-of-law analysis. The Louisiana Civil Code enactments and expressions in Book IV entitled "Conflict of Laws," afford the appropriate balancing of competing interests between states. Accordingly, Zuviceh's contention that the trial court erred in applying a choice-of-law analysis to the issue is without merit. Further, having determined that the trial court correctly determined that it must engage in a choice of law analysis, Zuviceh's contention that the trial court erred in relying on the case of Woodfield v. Bowman, 193 F.3d 354 (5th Cir.1999) in reaching that decision is moot.

CHOICE-OF-LAW ANALYSIS
The issue to be resolved is which state's policies would be most seriously impaired if its laws were not applied. LSA-C.C. arts. 3515, 3537. There are profound competing public policies and interests between the states of Louisiana and Mississippi in this case, not unlike many similar cases where the insurance coverage is provided to an out of state resident who is involved in an accident in the State of Louisiana.
The goal of Louisiana's UM legislation is to promote full recovery for innocent accident victims. Martin v. Champion Ins. Co., 95-0030, p. 3 (La.6/30/95), 656 So.2d 991, 994. Factors supporting Louisiana's strong interest in promoting full recovery for innocent automobile accident victims are: (1) there are economic interests involved which include costs of medical care (which are more likely to be paid if there is sufficient insurance); (2) there is significant involvement of the facilities of the Department of Public Safety and the judicial system; and (3) the issuing states of the UM policy often have credit and reduction provisions in their UM policies, thereby reducing limits and serving to prevent full recovery by the innocent accident victims.
In further support of a strong public policy for applying Louisiana law under the UM statute, McKenzie and Johnson in Louisiana Civil Law Treatise on Insurance Law and Practice § 119 at 293, make the following expression:
Any credit reducing the UM limits by the amount of liability insurance of the *346 adverse driver is clearly contrary to the underinsured motorist protection required by statute. The insured is entitled to recover, subject to the limits of his policy, the difference between his damages and liability insurance of the negligent motorist.
Mississippi, however, also has an interest in the UM coverage issue. It has a very real interest in regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose. Austin, 765 So.2d at 394.
In this case, Nationwide and plaintiff entered into a contract that contains reduction clauses that provide, in sum, that plaintiff's recovery will be reduced by amounts paid by Allstate or by Nationwide pursuant to its bodily injury coverage. This agreement was the contemplation of the contracting parties, and the premium of $101.00 per year for UM coverage was based on Nationwide's potential exposure under the policy, including the reduction clauses.
Francis v. Travelers Ins. Co., 581 So.2d 1036, (La.App. 1st Cir.1991), writs denied, 588 So.2d 1114, 1121 (La.1991), involved an accident that occurred prior to the 1987 amendment to the UM statute and the effective date of LSA-C.C. art. 14 and Book IV of the Civil Code. In Francis, this court performed an "interest analysis" to determine whether Louisiana or Ohio law applied to a UM policy. In that case, the plaintiffs were Louisiana residents who had been injured in Louisiana while they were guest passengers in a car owned and driven by Ohio residents. The owner of the car had a UM policy that was issued and delivered in Ohio. The UM policy contained a limitation of liability provision, and this court noted that a different result would be reached depending on which state's law applied. Francis, 581 So.2d at 1041. The policy also contained provisions relative to "out of state" coverage and stated that if accidents occurred in other states, the policy would be interpreted to provide at least the minimum amounts and types of coverage required by the laws of such other states. After conducting an "interest analysis," this court concluded Louisiana's interest outweighed that of Ohio and held that Louisiana law applied. Francis, 581 So.2d at 1042.
The method for determining the applicable law is now set forth in the Civil Code. The general rule concerning determination of which state's law is applicable to a conflicts situation is found in LSA-C.C. art. 3515, which states:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of (1) the relationship of each state to the parties and the dispute; (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
More specifically, in relation to conventional obligations, LSA-C.C. art. 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the *347 state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Zuviceh prepared an affidavit that purports to convey her many significant contacts with the state of Louisiana. At the hearing on this matter, the parties stipulated to the following facts contained therein:
1) The accident occurred in Slidell, Louisiana;
2) The other vehicle involved in the accident was owned and operated by Louisiana residents;
3) Zuviceh's emergency medical care was administered in Louisiana;
4) Zuviceh's treating physician, Dr. Larry Thirstrup, is located in Louisiana;
5) Zuviceh underwent extensive physical therapy at the Wellness Clinic, located in Louisiana;
6) Zuviceh's diagnostic testing was performed in Louisiana;
7) Zuviceh's two sisters, brother and stepmother reside in Louisiana, all of whom she visits frequently;
8) Zuviceh has children and grandchildren residing in Louisiana whom she visits frequently;
9) Zuviceh would travel to Louisiana to baby-sit her grandchild three times per week;
10) Zuviceh owns immovable property in Louisiana;
11) Zuviceh attends church in Louisiana on a weekly basis; and
12) Zuviceh frequently visits her stepchildren who live in Louisiana.
These factors speak for themselves, but the essence is that a Mississippi resident and domiciliary was involved in an accident in this state with a Louisiana resident. Medical attention and treatment were received in Louisiana, and Zuviceh has family, property and church membership in Louisiana, which causes her to frequently visit the state of Louisiana.
The parties' contacts with the state of Mississippi include the following: 1) Zuviceh's choice of residence is within Mississippi; 2) Mississippi is the place of negotiation and formation of the insurance contract; 3) the vehicle Zuviceh was driving at the time of the accident was registered and garaged in Mississippi; 4) Nationwide issues policies in Mississippi; and 5) the insurance policy is a Mississippi contract that contains no provision regarding out-of-state accidents that would suggest that the parties had contemplated the application of another state's laws.
The law applicable to the UM policy is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of the following enumerated factors:
LSA-C.C. art. 3537
(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, *348 the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
LSA-C.C. art. 3515
(1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
In conducting our analysis, we are guided by our previous decision of Francis. However, we are mindful that Francis was decided before the enactment of LSA-C.C. arts. 3515 and 3537. Moreover, we find the fact that the policy at issue in Francis contained a provision regarding consideration of other states' laws to be crucial to the finding that Louisiana's law applied. As previously noted, Nationwide's policy contains no such provision.
While Zuviceh clearly has contacts with Louisiana that cause her to frequently visit this state, we find that under the facts of this case, Mississippi's policies will be most seriously impaired if its law is not applied to the insurance policy. The application of Louisiana law to the policy would result in the abrogation of a Mississippi contract. Moreover, we find that Zuviceh's premium for UM coverage was based on the application of Mississippi law to the contract. Thus, we find no error in the trial court's determination that Mississippi's law applies to the Nationwide policy.

CONCLUSION
For reasons expressed herein, we conclude: (1) that the choice-of-law analysis contained in Book IV of the Louisiana Civil Code Article 3515 et seq. can best resolve the competing interests of sovereign states in a conflict-of-laws situation; and (2) the facts of this case and the policies of the competing states require the application of Mississippi law.
The trial court's judgment is affirmed and costs of this appeal are assessed to Zuviceh.
AFFIRMED.
NOTES
[1] Hon. William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In Trautman, the court concluded that based on LSA-C.C. art. 14, which provides, "Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code [entitled `Conflict of Laws']", LSA-R.S. 22:1406(D)(1)(a)(iii) was a provision `otherwise expressly provided by law' and thus applicable without first considering conflict-of-law principles. Anderson, 705 So.2d at 304-05; Trautman, 685 So.2d at 521.
[3] Professor Symeon C. Symeonides of Louisiana State University's Paul M. Hebert Law Center, as Reporter for the Louisiana State Law Institute, drafted the bill that replaced the two conflicts articles in the Preliminary Title of the Louisiana Civil Code of 1870 with LSA-C.C. art. 14 and LSA-C.C. arts. 3515-3549 contained in Book IV of the Civil Code. See Symeon C. Symeonides, "Louisiana Conflicts Law: Two `Surprises'", 54 La.L.Rev. 497, 503 n. 30 (1994).