836 So.2d 347 (2002)
Kathleen DREISEL
v.
METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY.
No. 2001 CA 2705.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Writ Denied March 28, 2003.
Kevin C. Schoenberger, New Orleans, for Plaintiff-Appellee Kathleen Dreisel.
Bruce D. Burglass, Jr., Celeste Brustowicz, Scott O. Gaspard, Burglass & Tankersley, L.L.C., Metairie, for Defendant-Appellant Metropolitan Property and Casualty Insurance Company.
Before: PARRO, JAMES, and PATTERSON, JJ.[1]
PARRO, J.
This is an appeal by an underinsured motorist insurer from a trial court judgment granting its insured's motion for partial summary judgment based on a finding that Louisiana law governed the determination of coverage under the insurance *348 policy issued in Massachusetts.[2] For the following reasons, the judgment is reversed.

Facts and Procedural History
On September 12, 2000, Kathleen Dreisel (Dreisel), a Massachusetts resident, was a guest passenger in an automobile that was owned and operated by a Louisiana resident when a single-car accident occurred in St. Tammany Parish, Louisiana. As a result of the accident, Dreisel sustained severe injuries requiring medical attention in Louisiana. State Farm Automobile Insurance Company (State Farm), the liability insurer for the driver, admitted liability and tendered to Dreisel the per person policy limit of $100,000, plus $5,000 in medical payments, pursuant to a settlement between Dreisel and State Farm and its insured.
On the date of the accident, Dreisel had in full force and effect a policy providing underinsured motorist (UM) coverage issued to her and her husband by Metropolitan Property and Casualty Insurance Company (Metropolitan).[3] Metropolitan issued the policy to the Dreisels in the state of Massachusetts relative to automobiles that were registered and garaged in Massachusetts. The Metropolitan policy provided UM coverage limits in the amount of $50,000 per person and $100,000 per accident; however, the policy provided that the limits for coverage for bodily injury caused by an underinsured automobile was subject to adjustment. Specifically, it provided that Metropolitan would only pay for any unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the owner and operator of the underinsured automobile and the UM limits.
Dreisel notified Metropolitan of the Louisiana accident and sought recovery under her UM coverage. Metropolitan denied coverage based on the reduction clause contained in the policy, as well as the policy language indicating the contract of insurance was to be governed by Massachusetts law. Like the language of Metropolitan's policy, Massachusetts law provided that UM coverage was subject to a dollar-for-dollar credit for the liability insurance covering the owner and operator of the legally responsible automobile up to the exhaustion of its UM limits. Since the $105,000 credit for amounts paid to Dreisel by State Farm exceeded the $50,000 per person UM limit, Metropolitan maintained that it had no exposure for UM coverage to Dreisel on account of the accident.
Based on its denial of her UM claim, Dreisel filed a petition for damages against Metropolitan. Subsequently, Dreisel filed a motion for partial summary judgment, arguing that Louisiana law, not Massachusetts law, governed the determination of UM coverage available to her. Metropolitan filed a cross motion for summary judgment claiming the reverse. After a hearing, the trial court found that Louisiana law applied and noted in oral reasons that the accident occurred in Louisiana, the car in which Dreisel was riding at the time of the accident was registered in Louisiana and driven by a Louisiana resident, and significant medical treatment was rendered to Dreisel in Louisiana. Accordingly, the trial court granted Dreisel's motion for partial summary judgment and denied *349 the opposing motion filed by Metropolitan. From the grant of Dreisel's partial motion for summary judgment, Metropolitan appealed, contending that the trial court erred in finding that the Louisiana UM statute applied to a Massachusetts insurance policy that expressly provided that the contract of insurance would be governed by Massachusetts law.

Standard of Review
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673.

Discussion
After the 1987 enactment of LSA-R.S. 22:1406(D)(1)(a)(iii) relative to uninsured motorist coverage,[4] Louisiana courts were faced with the issue of whether the general conflict-of-laws provisions governed, requiring a choice-of-law analysis in cases of this nature, or whether LSA-R.S. 22:1406(D)(1)(a)(iii), as a more specific choice-of-law rule, controlled in cases of this nature. See LSA-C.C. art. 14. In Zuviceh v. Nationwide Insurance Company, 00-0773 (La.App. 1st Cir.5/11/01), 786 So.2d 340, writ denied, 01-2141 (La.11/9/01), 801 So.2d 373, this court considered that issue after recognizing that the issue had been resolved differently by the Louisiana courts of appeal. Notably, the second and third circuits favor a choice-of-law analysis over the automatic application of LSA-R.S. 22:1406(D)(1)(a)(iii). See Adams v. Thomason, 32,728 (La.App. 2nd Cir.3/1/00), 753 So.2d 416, 426, writ denied, 00-1221 (La.6/16/00), 764 So.2d 965; Anderson v. Oliver, 97-1102 (La.App. 3rd Cir.1/7/98), 705 So.2d 301, 305, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434; Holcomb v. Universal Insurance Company, 93-1424 (La.App. 3rd Cir.6/1/94), 640 So.2d 718, *350 720-722, writ denied, 94-1740 (La.10/7/94), 644 So.2d 643. However, the fourth and fifth circuits automatically applied Louisiana's UM law, based on the language in LSA-R.S. 22:1406(D)(1)(a)(iii), without conducting a choice-of-law analysis. See Austin v. Western World Insurance Company, 99-2541 (La.App. 4th Cir.5/17/00), 765 So.2d 390, 395, writ denied, 00-1795 (La.9/22/00), 768 So.2d 1288; Drew v. Martello, 98-1141, 98-1142 (La.App. 5th Cir.2/23/99), 729 So.2d 90, 93; Dekeyser v. Automotive Casualty Insurance Company, 97-1251 (La.App. 4th Cir.2/4/98), 706 So.2d 676, 680.
LSA-C.C. art. 14 provides, "Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code." In Zuviceh v. Nationwide Insurance Company, this court considered whether LSA-R.S. 22:1406(D)(1)(a)(iii) is a provision "otherwise expressly provided by the law of this state," as stated in LSA-C.C. art. 14, which requires application of Louisiana law without a conflict-of-laws analysis. The introductory language of LSA-R.S. 22:1406(D) directs that provisions enumerated thereafter apply to policies issued in Louisiana. Based on the legislature's failure to modify the introductory paragraph of LSA-R.S. 22:1406(D) in conjunction with its enactment of LSA-R.S. 22:1406(D)(1)(a)(iii), this court concluded that LSA-R.S. 22:1406(D)(1)(a)(iii) only governs UM coverage for policies issued in Louisiana. Zuviceh v. Nationwide Insurance Company, 786 So.2d at 345. Because the policy under consideration in this case was issued in Massachusetts, as opposed to Louisiana, subparagraph (D)(1)(a)(iii) has no application. See Zuviceh v. Nationwide Insurance Company, 786 So.2d at 345. Accordingly, it is appropriate to conduct a choice-of-law analysis in cases of this nature. Zuviceh v. Nationwide Insurance Company, 786 So.2d at 345.
The Louisiana Civil Code enactments and expressions in Book IV, entitled "Conflict of Laws," afford the appropriate balancing of competing interests between states. The objective is to identify the state whose policies would be most seriously impaired if its law were not applied to the issue at hand. LSA-C.C. arts. 3515 and 3537. With respect to conventional obligations and this case, the law of the state applicable to the insurance contract and its UM coverage is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of the following factors:
1. the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties;
2. the nature, type, and purpose of the contract; and
3. the policies referred to in LSA-C.C. art. 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
See LSA-C.C. art. 3537; Zuviceh v. Nationwide Insurance Company, 786 So.2d at 347-348.
There are profound competing public policies and interests between the states of Louisiana and Massachusetts in this case. The goal of Louisiana's UM legislation is to promote full recovery for innocent accident victims. Martin v. Champion Insurance Company, 95-0030 (La.6/30/95), 656 So.2d 991, 994. Factors supporting Louisiana's strong interest in *351 promoting full recovery for innocent automobile accident victims are: (1) there are economic interests involved, which include costs of medical care (which are more likely to be paid if there is sufficient insurance); (2) there is significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states of the insurance policy often have credit and reduction provisions in their UM coverage, thereby reducing limits and serving to prevent full recovery by the innocent accident victims. Zuviceh v. Nationwide Insurance Company, 786 So.2d at 345. Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by Louisiana's statute. Zuviceh v. Nationwide Insurance Company, 786 So.2d at 345-346, quoting William Shelby McKenzie and H. Alston Johnson, III, Insurance Law and Practice § 119, p. 293, in Louisiana Civil Law Treatise (2nd ed.1996).
On the other hand, Massachusetts has a very real interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose. See Zuviceh v. Nationwide Insurance Company, 786 So.2d at 346.
Metropolitan and Dreisel entered into a contract that contained a reduction clause, which provided for the reduction in her UM coverage by the amount collected from the automobile bodily injury liability insurance covering the owner and operator of the underinsured automobile. This agreement was the contemplation of the contracting parties, and the premium of $16 per year per vehicle for $50,000/$100,000 of UM coverage for bodily injury caused by an underinsured auto was based on Metropolitan's potential exposure under the policy, with the reduction clause.
The record in this case establishes the following contacts with the state of Louisiana:
1. The accident occurred in St. Tammany Parish, Louisiana;
2. The automobile in which Dreisel was riding was owned and operated by a Louisiana resident;[5]
3. The automobile in which Dreisel was riding was registered and garaged in Louisiana; and
4. $92,000 in medical care was administered to Dreisel in Louisiana.
Dreisel's contacts with the state of Massachusetts include the following:
1. Dreisel's choice of residence is in Massachusetts;
2. Massachusetts is the place of negotiation and formation of the insurance contract;
3. the vehicles on which Dreisel purchased coverage were registered and garaged in Massachusetts;
4. the insurance policy is a Massachusetts contract which provides for the application of Massachusetts law relating to automobile insurance; and
5. nothing in the policy indicated that the parties contemplated the application of another state's laws relative to accidents occurring outside of Massachusetts.
Under the facts of this case, we find Massachusetts has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy *352 to an out-of-state resident who happened to have sustained an injury while transitorily within its borders. The application of Louisiana law to the insurance policy would result in the abrogation of a Massachusetts contract. Moreover, we find that Dreisel's premium for UM coverage was based on the application of Massachusetts law to the contract. Under a conflict-of-laws analysis, we conclude that Massachusetts' policies will be most seriously impaired if its law is not applied to the insurance policy. Thus, we find error in the trial court's determination that Dreisel had satisfied her burden of proving that Louisiana law applied to the Metropolitan policy. Accordingly, the trial court erred in granting Dreisel's motion for partial summary judgment.

Decree
For the foregoing reasons, the trial court's judgment granting Dreisel's motion for partial summary judgment is reversed. Costs of this appeal are assessed to Kathleen Dreisel.
REVERSED.
NOTES
[1] Judge A. Clayton James, retired from the Twenty-Second Judicial District Court, and Michael A. Patterson are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] The partial summary judgment in this case was designated as a final judgment by the court after an express determination that there was no just reason for delay. See LSA-C.C.P. art.1915.
[3] Separate coverage was purchased for bodily injury caused by an uninsured motorist.
[4] LSA-R.S. 22:1406(D)(1)(a)(iii) provides that "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."
[5] Notably, no other automobiles or Louisiana residents were involved in the accident.