MAX N. TOBIAS, JR, Judge.
_JjThe plaintiff, Timothy Collins (“Mr. Collins”), appeals the granting of a motion for summary judgment in favor of the defendant, State Farm Mutual Automobile Insurance Company (“State Farm”), which dismissed Mr. Collins’ claim for underin-sured motorist benefits upon application of Ohio law to the insurance policies at issue. For the following reasons, we affirm.
On 26 September 2009, while stopped at Tchoupitoulas Street near its intersection with Girod Street in New Orleans, Mr. Collins, a permissive user of an automobile owned by Dayna Pleasant (“Ms. Pleasant”) and insured by an automobile liability policy issued by State Farm, was rear-ended by a vehicle driven by the defendant, Michael Downes, also insured by State Farm.
Mr. Collins timely filed a suit for personal injuries naming as defendants, Mr. Downes and State Farm. Mr. Collins also named State Farm as a defendant in its capacity as the uninsured/underinsured motorist and excess liability insurer of the vehicle he was operating at the time of the accident that was owned by Ms. Pleasant.[1] Specifically, Mr. Collins alleged that State Farm provided uninsured/underinsured motorist (“UM/UIM”) benefits in the amount of |¾$100,000.00 on the underlying automobile liability policy, and excess insurance in the form of a personal liability umbrella (“PLU”) policy on the same vehicle affording $1 million coverage for the injuries he sustained in the accident.
State Farm tendered its $100,000.00 liability limits to Mr. Collins under the terms of the auto liability policy it issued to Mr. Downes. State Farm, as automobile liability and excess insurers[2] of Ms. Pleasant, moved for summary judgment on the basis that both the UM/UIM and PLU policies issued to Ms. Pleasant were Ohio contracts of insurance that did not provide coverage to Mr. Collins for his loss. Specifically, State Farm argued that (1) the automobile liability policy issued to Ms. Pleasant provided UM/UIM limits of $100,000.00/$300, 000.00, but contained a clause that reduced the UM/UIM limits by the amount of liability coverage tendered on behalf of the tortfeasor; and (2) in her PLU policy application, Ms. Pleasant rejected UM/UIM coverage.
Mr. Collins opposed State Farm’s motion and, thereafter, filed his own motion for summary judgment, alleging that (1) he was a Louisiana resident, (2) the accident occurred in Louisiana, (3) the defendant driver was a Louisiana resident, and (4) because Ms. Pleasant had transferred her residence and domicile from Ohio to Louisiana prior to the subject accident and was, therefore, a Louisiana resident and domiciliary on the date of the accident, Louisiana law should apply to the State Farm policies at issue affording coverage. Because Louisiana UM/UIM law generally does not permit application of reduction clauses, Mr. Collins argued the reduction clause should not be enforced.
|sThe trial court denied Mr. Collins’ motion for summary judgment and ruled in favor of State Farm on its motion, dismissing Mr. Collins’ claims against it with full prejudice. In doing so, the court determined that, without evidence that State Farm was given proper notice and had *1179 knowledge that Ms. Pleasant was living in Louisiana, and that her vehicle was primarily garaged in Louisiana rather than in Ohio when it renewed the policies in June 2009, the policies are to be deemed Ohio policies and Ohio law applies.[3] From that judgment, Mr. Collins appealed.
Appellate courts review a grant of summary judgment de novo applying the same criteria applied by district courts to determine if summary judgment is appropriate. Champagne v. Ward, 03-3211, p. 4 (La.1/19/05), 893 So.2d 773, 776.
The sole issue presented for appellate review is whether Louisiana or Ohio law applies to the interpretation of Ms. Pleasant’s automobile liability policy and/or PLU policy issued by State Farm. In a multistate case, the appropriate starting point is to first determine that a difference between Louisiana’s law and the law of the foreign state exists, and then to conduct a choice-of-law analysis. Champagne, p. 22 (La.1/19/05), 893 So.2d 773, 786. In the case at bar, the applicable Ohio statute, Ohio R.C. 3937.18(C), provides:
The policy limits of the [UM/UIM] coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.[4]
14 Under Louisiana law, reduction clauses are not enforceable when doing so would preclude full recovery by a UM/UIM insured, to which the insured would otherwise be entitled under Louisiana’s UM/ UIM law. La. R.S. 22:1295. See Zuviceh v. Nationwide Ins. Co., 00-0773, p. 7 (La.App. 1 Cir. 5/11/01), 786 So.2d 340, 345-46; Francis v. Travelers Ins. Co., 581 So.2d 1036, 1043 (La.App. 1st Cir.1991).
In Champagne, supra, the Court held that Louisiana law does not automatically apply to UM/UIM claims under a policy issued in another state, even though a Louisiana resident is involved in the accident. Rather, pursuant to La. C.C. arts. 3515 and 3537, a choice-of-law analysis is necessary. See Champagne, p. 2, 893 So.2d at 775.
La. C.C. art. 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies and upholding the justified expectations of parties and minimizing he adverse consequences that might follow from subjecting a party to the law of more than one state.
La. C.C. art. 3537 provides:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seri *1180 ously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of ^negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
Louisiana’s law, as set forth above, affords the balancing of competing interests between states. Article 3515 instructs the court to examine the relationship of each state to the parties and the dispute. Article 3537 invites analysis of the nature, type, and purpose of the contract. The objective of these provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand. See La. C.C. arts. 3515 and 3537; Champagne, p. 22, 893 So.2d at 786. In the case at bar, the law of the state applicable to the insurance contract and its UM/UIM and excess coverage is determined by evaluating the strength and pertinence of the relevant policies of Louisiana and Ohio in light of the factors set forth in La. C.C. arts. 3515 and 3537. Champagne, id.
We note that profound competing public policies and interests exist between the states of Louisiana and Ohio in this case. Louisiana has expressed as a public policy its intent to protect Louisiana residents and others when an accident occurs on Louisiana roads. The stated purpose of Louisiana’s UM/ UIM legislation is to promote full recovery for innocent automobile accident victims by mandating minimum liability insurance coverage and making coverage available when the tort-feasor is uninsured or underinsured. See Martin v. Champion Ins. Co., 95-0030, p. 3 (La.6/30/95), 656 So.2d 991, 994. Factors supporting Louisiana’s strong interest in promoting full recovery for innocent automobile victims are: (1) 16there are economic interests involved, which include costs of medical care (which are more likely to be paid if sufficient insurance exists); (2) significant involvement of the facilities of the Department of Public Safety and Corrections and the judicial system; and (3) the issuing states of the insurance policy often have credit and reduction provisions in their UM/UIM coverage, thereby reducing limits and serving to prevent full recovery by an innocent victim. See Champagne, p. 25, 893 So.2d at 788, citing Zuviceh, p. 7 (La.App. 1 Cir. 5/11/01), 786 So.2d at 345.
In further support of a strong public policy for applying Louisiana law under the UM/UIM statute, McKenzie and Johnson in Louisiana Civil Law Treatise on Insurance Law and Practice § 119 at 293, make the following expression:
Any credit reducing the UM limits by the amount of liability insurance of the adverse driver is clearly contrary to the underinsured motorist protection required by statute. The insured is entitled to recover, subject to the limits of his policy, the difference between his damages and liability insurance of the negligent motorist.
Ohio, however, also has an interest in the UM/UIM coverage issue. It has a real interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof. The integrity of a contract is a substantial and real interest. The fact that Congress *1181 has permitted the fifty states to have their own separate system of regulations governing insurance strongly suggests this is a legitimate public purpose. Champagne, pp. 25-26, 893 So.2d at 788; Zuviceh, p. 7, 786 So.2d at 346.
In the case at bar, State Farm and Ms. Pleasant entered into a contract that contains reduction clauses that provide, in essence, that Mr. Collins’ recovery will be reduced by the amounts previously collected from the automobile bodily injury pliability insurance contract of Mr. Downes, the owner and operator of the underinsured vehicle. This agreement was the contemplation of the contracting parties, and the bi-annual premium of $20.62 for $100,000.00/$300,000.00 of UM7 UIM coverage was assessed and computed accordingly, based on State Farm’s potential exposure under the policy, including the reduction clauses. Champagne, p. 26, 893 So.2d at 789; Zuviceh, p. 8, 786 So.2d at 346.
In support of its motion for summary judgment, State Farm submitted three affidavits to establish that the policies issued to Ms. Pleasant were negotiated and issued in Ohio. The first affidavit is in the form of a “Certificate” from State Farm issued by Sadi Chhoa dated 3 September 2010, which states that State Farm’s policy, number 248 2380-A20-35H, was issued to Ms. Pleasant of 1819 Sunny-meade Road, Xenia, Ohio, and was in effect on the date of the accident. The second affidavit is a Certificate from State Farm Fire and Casualty Company (“SFF & CC”) issued by Gloria Peck regarding the PLU policy, which states that State Farm policy, number 35-EA-5348-9, was issued to Ms. Pleasant, 1819 Sunnymeade Road, Xenia, Ohio, and was in effect on the date of the accident. The third affidavit submitted by State Farm is from Kathy Guirreri, the custodian of the automobile liability and the PLU policies issued to Ms. Pleasant. In her affidavit, Ms. Guirreri states that the State Farm and SFF & CC policies issued to Ms. Pleasant were issued in conformity with, and under the law of Ohio, and that State Farm’s and SFF & CC’s records indicate Ms. Pleasant’s address to be maintained at 1819 Sunny-meade Road, Xenia, Ohio. Mr. Guirreri also attested that in August 1996, Ms. Pleasant was offered and validly rejected, under the laws of Ohio, UM/UIM coverage in connection with her application for the PLU policy. According to Ms. Guirreri, the PLU policy issued to Ms. Pleasant did not provide |SUM/UIM coverage at any time from the date of the policy’s inception through the date of loss.[5] Ms. Guirreri further attested that the PLU policy issued to Ms. Pleasant did not include permissive users of vehicles in the definition of “who is an insured,” but rather included only the named insured and family members whose primary residence was the household of the named insured on the policy. Thus, State Farm argues that even assuming Ms. Pleasant had purchased UM/UIM under the PLU policy, Mr. Collins would not qualify as an “insured” as he was neither a named insured nor a resident relative of Ms. Pleasant.
Mr. Collins did not submit any countervailing evidence in opposition to State Farm’s motion to refute State Farm’s position that the policies issued to Ms. Pleasant were Ohio policies, negotiated and issued in the state of Ohio. While Mr. Collins did submit an affidavit of Ms. *1182 Pleasant attesting that she has resided in Louisiana since February 2009, the affidavit does not refute that she maintained her Xenia, Ohio address with State Farm or that she ever gave State Farm notice that she had moved to Louisiana and that her car was primarily garaged in Louisiana as is required by her policy.[6] Moreover, in brief, Mr, Collins concedes |3that, at the time of the accident, Ms. Pleasant’s vehicle continued to be registered, titled, and licensed in Ohio.
In sum, our de novo review of the record establishes the following contacts with Louisiana:
1) The accident occurred in New Orleans, Louisiana;
2) The plaintiff, Mr. Collins, is a Louisiana resident;
3) The owner of the vehicle, Ms. Pleasant, is a Louisiana resident;
4) At the time of the accident, Ms. Pleasant’s vehicle was primarily garaged in Louisiana;
5) The defendant, Mr. Downes, is a Louisiana resident; and
6)The defendant’s automobile liability insurance policy was issued to defendant in Louisiana.
Additionally, we find the record establishes the parties’ contacts with the Ohio as follows:
1) The State Farm automobile liability policy in effect on the date of the accident was issued to Ms. Pleasant in conformity with, and under the laws of the state of Ohio, [ 10and delivered to Ms. Pleasant’s address as listed at 1819 Sunnymeade Road, Xenia, Ohio;[7]
2) Ohio is the place of negotiation and formation of the insurance contract;
8) The vehicle Mr. Collins was driving was licensed, titled, and registered in Ohio;
4) The State Farm policy maintained Ms. Pleasant’s address as Xenia, Ohio;
5) The policy premiums paid by Ms. Pleasant were based on her Xenia, *1183 Ohio address, not her Louisiana address;
6) State Farm issues insurance policies in Ohio;
7) The insurance policy issued to Ms. Pleasant insuring the vehicle Mr. Collins was driving is an Ohio policy containing provisions permitted under Ohio law.
After consideration of the above factors of this case, we conclude that Ohio has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana, even though the accident occurred in Louisiana and involved Louisiana residents. We find that applying Louisiana law to the Ohio policies in this case would result in an abrogation of Ohio contracts. We further hold that it is more likely than not that the premiums charged for both the | n automobile liability policy and PLU policies were based on the application of Ohio law to the contracts. Employing a conflict-of-law analysis pursuant to La. C.C. arts. 3515 and 3537, we conclude that Ohio’s policies will be most seriously impaired if its law is not applied to the automobile liability and PLU policies.
CONCLUSION
Accordingly, we hold that State Farm has met its burden of establishing that Ohio has a more substantial interest in this case and that Mr. Collins has failed to present factual support for his contentions. Therefore, we affirm the trial court’s judgment holding that State Farm is entitled to summary judgment as a matter of law.
AFFIRMED.

. Ms. Pleasant is not a party to this litigation.

. The PLU policy was actually issued by State Farm Fire & Casualty Company, not State Farm.

. It is undisputed that if Ohio law is applied to the policies, no coverage is available to Mr. Collins for his alleged injuries under either the State Farm automobile liability policy (which provides for a reduction and setoff of all available underlying liability insurance) or PLU policy (as Ms. Pleasant specifically rejected the UM coverage in her PLU policy application).

. For purposes of setoff, “amounts available for payment” mean "the amounts actually accessible to and recovered by” a UM/UIM claimant. Littrell v. Wigglesworth, 91 Ohio St.3d 425, 430, 746 N.E.2d 1077, 1084 (2001).

. Additionally, Ms. Guirreri stated that for the specific policy period that included the date of the subject accident, UM/UIM coverage under the PLU policy issued to Ms. Pleasant was no longer written by her insurer, was not available to Ms. Pleasant from her insurer, and was not offered to Ms. Pleasant by her insurer for that policy period in the immediately preceding renewal notice.

. Ms. Pleasant's automobile liability policy, which is contained in the record on appeal, provides, in pertinent part, the following provisions:
CONDITIONS
6. Premium
[[Image here]]
... The premium for this policy is based on information State Farm has received from you or other sources. If the information is incorrect or incomplete, or changes during the policy period, you must inform State Farm of any changes regarding the following:
[[Image here]]
d. the location where your car is principally garaged. You agree that if this information or any other information used to determine the premium is incorrect or incomplete, or changes during the policy period, we may decrease or increase the premium during the policy period based upon the corrected, completed or changed information.
7. Concealment or Fraud
There is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

. Though Ms. Pleasant had been residing in Louisiana for several months prior to, and at the time of, the six-month automatic renewal of both her automobile liability and PLU policies, the evidence in the record before us indicates that she failed to notify State Farm (or SFF & CC) of her change of address from Ohio to Louisiana and/or to advise that the insured vehicle was no longer principally garaged in Ohio, but rather, was primarily garaged in Louisiana, as required by the terms of the policies. Additionally, Ms. Pleasant failed to license, title, and register her vehicle in Louisiana, as is required by all Louisiana resident motorists. See La. R.S. 32:51; La. R.S. 32:52; La. R.S. 32:402; La. R.S. 47:501; La. R.S. 32:1301; and La. R.S. 32:1304.